■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD GOODSON, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County (Harrington, J.), rendered February 21, 1980, convicting him of grand larceny in the third degree, upon a jury verdict, and imposing sentence. Judgment affirmed. While it is plain that the 90-year-old complaining witness was not easy to examine, defendant's extensive cross-examination ultimately elicited answers to all questions. The cross-examination, which extended into a second day, was repetitive to the point of tedium, and was far from gentle despite the age of the witness. Focusing on the insulting nature of some of the witness' responses, our dissenting colleague concludes that the trial became a mockery. We disagree. In reviewing the record, we do not find that defendant was deprived of a fair trial because an extremely aged woman, who ultimately answered the questions put, was absurdly crotchety in responding to some. Defendant's other contentions do not warrant reversal. Lazer, J. P., Gulotta and Cohalan, JJ., concur.

Gibbons, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: The defendant was charged with robbery in the third degree. It was alleged that on March 3, 1979 he forcibly stole currency from Pearl Reeves, a 90-year-old woman, by holding her around the neck and threatening to kill her. She claimed to know the person who robbed her and furnished the name "Richard" to the police. Someone other than the complainant supplied the name "Goodson". Although only one robber committed the crime, the complainant attributed the robbery also to Richard Dixon and Peter Slane, as well as to an "old man". In recounting, at trial, where she made the identification of the perpetrator following the crime, while there is no dispute it was made in the police car outside her building, the elderly complainant testified that she identified defendant in a one-man showup at her apartment. Pearl Reeves proved to be a difficult witness and, considering her age, it is understandable. However, it is little comfort to a defendant, whose liberty is at stake, that consideration should first be given to an obstreperous witness to the detriment of his constitutional right of confrontation. Mrs. Reeves evinced an unalterable disdain for the defendant's lawyer and an equally strong aversion to submission to cross-examination. Without attempting to recapture all of the pithy responses put forth by Pearl Reeves, a reference to some of them may be enlightening. She testified as follows: "Q. Mrs. Reeves, isn't this identification of Richard Goodson, in fact, your way of getting even with Mr. Goodson because you don't like him? A. Listen, you better stop telling lies before I get mad. THE COURT: Will you answer the question? THE WITNESS: No, I never been mad with that man in my life. THE COURT: Put another question, Mr. Klein. THE WITNESS: I never been mad with that human bum in my life. THE COURT: Put another question. THE WITNESS: That man out there is a bum. THE COURT: That's enough, please. You've answered the question." Further, the witness referred to the defendant's attorney as a "fool", a "damn fool", as "mother f-----", and "a pain in the you know what". She referred to a question posed as "damn sh-- ", and suggested that defendant's attorney "go somewhere and hide". She wanted him to "let me alone, because you are just like that liar", referring to defendant. Additional remarks included: "If I could beat up that lawyer I would"; "I feel just like slapping your face, Mister"; and "I got *** sick of you." In other parts of her testimony, the witness characterized the defendant as a "rogue", "human bum" and "liar". The Trial Judge admonished the District Attorney to remedy the intolerable conduct of the witness with a warning that if she continued, she

would be dismissed. Despite this admonition, the witness continued her insulting reposes to questions posed. Whatever the prosecutor's problems may be in the presentation of the case against defendant, defendant is, nevertheless, not required to endure an infringement of his right to cross-examination in a trial which must be conducted with some regard for the rules of decorum in a court of justice. In the course of this tumultuous cross-examination, the objections were treated by the court in a manner which reflected some concern for the peculiarities of the witness. While this delicate treatment permitted the examination to proceed past areas that touched the sensitivity of Pearl Reeves, it did not afford the defendant the depth of inquiry otherwise allowable. Were I not in favor of reversal because of the mockery of our system engendered by the witness' recalcitrance, I nevertheless would reverse on the ground that the defendant was ambushed on a very important aspect of this case. Police Officer John Severino testified at the *Wade* hearing that defendant denied his involvement in the crime. Similarly, Police Officer Robert McCartney, at the trial, stated on direct examination that the defendant denied involvement. No notice was given, pursuant to CPL 710.30, that any inculpatory statement would be used against defendant; nevertheless, on redirect examination, the District Attorney was permitted to elicit testimony from Officer McCartney, on the basis that defendant opened the door to an inculpatory statement, as follows: "A. He stated that he was there, but he didn't rob the old lady." This was over defendant's objection. In order to rectify a sudden adverse turn of events, defendant's counsel called John Severino, Robert McCartney's partner, assuming, of course, that it would be prudent to do so because of the assurance afforded by the District Attorney's notice that there were no inculpatory statements. Upon testifying as defendant's witness, John Severino likewise said that the defendant, while disclaiming participation in the alleged crime, admitted that he was there. Under the circumstances, I, therefore, vote to reverse the judgment and order a new trial.